IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LEROY FRANCE                                                                          PLAINTIFF

v.                                    Case No. 4:24-cv-00814-KGB

FLAGSHIP CREDIT ACCEPTANCE, LLC                                       DEFENDANT

## ORDER

Before the Court is plaintiff Leroy France's motion for preliminary injunction and to temporarily suspend loan payments (Dkt. No. 10).  Defendant Flagship Credit Acceptance, LLC ("Flagship") filed a response in opposition to the motion, and Mr. France replied to the response (Dkt. Nos. 12; 16).  Also pending before the Court is Flagship's motion to stay proceedings and compel arbitration (Dkt. No. 14).  Mr. France filed a response in opposition to the motion, and Flagship replied to the response (Dkt. Nos. 25; 27).  The Court held a hearing on Flagship's motion to stay proceedings and compel arbitration on April 23, 2025, at which Mr. France appeared *pro se* and Flagship appeared with counsel (Dkt. No. 30).  For the following reasons, the Court grants Flagship's motion to stay proceedings and compel arbitration (Dkt. No. 14).  The Court stays this action pending the conclusion of the arbitration proceedings.  The Court denies as moot Mr. France's motion for preliminary injunction and to temporarily suspend loan payments (Dkt. No. 10).

### I.      Background

On June 3, 2023, Mr. France entered into a retail installment sales contract with Sandy Sansing CDJR of Foley, an Alabama car dealership (the "Dealership"), for a new, 2022 Chrysler Pacifica (Dkt. No. 14-1).  The contract, per its express terms, was assigned to Flagship (*Id.*).  After Mr. France executed the contract, the Dealership agreed to reduce the sale price of the vehicle from

$52,316.07 to $49,142.37, but with a higher APR of 25.07% (Dkt. Nos. 14-1, at 2; 14-2, at 2). As a result, Mr. France and Flagship executed a new contract on June 15, 2023 (hereinafter the "Contract") (Dkt. No. 14-2). Mr. France asserts that the Dealership mailed the Contract to him and that he signed it in Arkansas (Dkt. No. 25, at 4). The Contract, per its express terms, was assigned to Flagship (Dkt. No. 14-2, at 5).

The Contract provides: "Federal law and the law of the state of Alabama apply to this contract." (*Id.*, at 1). The Contract also contains a broad arbitration clause under the heading, "**ARBITRATION PROVISION PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS.**" (*Id.*, at 5). The arbitration clause provides, in part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(*Id.*, at 5).

On September 24, 2024, Mr. France, proceeding *pro se*, filed a complaint against Flagship alleging a violation of Arkansas usury law, a violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101 *et seq.*, a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), and a violation of Arkansas's Fair Debt Collection Practices Act ("AFDCPA"), Ark. Code Ann. § 17-24-501 *et seq.*, relating to alleged harassment (Dkt. No. 1).

On January 6, 2025, Mr. France filed a motion for preliminary injunction to temporarily suspend loan payments to Flagship during the pendency of this litigation primarily based on his complaints under Arkansas usury laws and his ADTPA claim (Dkt. No. 10). Mr. France asserts

that Flagship's ties to Alabama are insufficient to establish a reasonable relationship to enforce the choice of law provision in the Contract (*Id*., at 4).  Flagship responded in opposition to the motion for preliminary injunction to temporarily suspend loan payments and argued that Mr. France cannot show a likelihood of success on the merits of any of his claims (Dkt. No. 12).  Mr. France replied to Flagship's response and argued that Flagship mischaracterized the law and the facts in its response (Dkt. No. 16).

On February 3, 2025, Flagship moved to stay proceedings and compel arbitration (Dkt. No. 14).  In support of its motion to stay proceedings and compel arbitration, Flagship alleges that in the Contract there is an arbitration clause that provides for binding arbitration of any and all disputes (Dkt. No. 14-2, at 5).  Flagship contends that, regardless of whether the Contract is governed by Alabama law, as the Contract provides, or Arkansas law, as Mr. France contends, the arbitration clause is valid and enforceable (Dkt. No. 14, ¶ 6).

Mr. France filed a response in opposition to Flagship's motion to stay proceedings and compel arbitration (Dkt. No. 25).  Mr. France argues that the Contract is illegal under Arkansas law and that the illegality renders all provisions in the Contract, including the arbitration clause, void and unenforceable (*Id*., at 3).  Mr. France also argues that the arbitration clause is one-sided and unconscionable and that there are misrepresentations regarding the arbitration agreement (*Id*., at 4–5).

Flagship replied to Mr. France's response.  Flagship contends that the arbitration clause in the Contract is valid and that the disputes at issue fall within the terms of the arbitration clause; the Contract's legality must be determined by the arbitrator; the arbitration clause is not unconscionable and should be enforced; and Mr. France has failed to establish misrepresentation (Dkt. No. 27-1).

II.     **Motion To Stay Proceedings And Compel Arbitration**

A.      **Law On Motion To Compel Arbitration**

The Federal Arbitration Act ("FAA") provides, as relevant here, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has described this provision as reflecting both "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and "the fundamental principle that arbitration is a matter of contract," *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). In line with these principles, courts must "'rigorously . . . enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)).

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). To that end, the Court's task is to determine: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the terms of that agreement. *See Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004); *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536, 537 (8th Cir. 2002); *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001). "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Any doubts

concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25. The party seeking to compel arbitration carries the burden to prove a valid and enforceable agreement. *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019). "If the parties have a valid arbitration agreement that encompasses the dispute, a motion to compel arbitration must be granted." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016).

### B.    Analysis Of Motion To Compel Arbitration

#### 1.    The FAA Applies

The FAA makes enforceable a written arbitration clause in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has construed the language of the FAA broadly to encompass all contracts involving interstate commerce, "even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." (quoting *Allied-Bruce Terminix Cos.*, 513 U.S. at 273, 274)).

Here, it is undisputed that the Dealership, located in Alabama, sold a vehicle to Mr. France, an Arkansas citizen (Dkt. No. 1, ¶¶ 11-18). It is also undisputed that Mr. France intended to, and did, register the vehicle in Arkansas and uses the vehicle in Arkansas (Dkt. No. 1, ¶¶ 11-18). In his reply in support of his motion for preliminary injunction, Mr. France states that Flagship is a Delaware LLC with its principal place of business in Pennsylvania and that his loan payments to Flagship are processed in Texas (Dkt. No. 16, at 2). Accordingly, the Contract evidences a transaction involving interstate commerce, and the FAA applies to the arbitration clause.

2.      **There Is A Valid Enforceable Agreement To Arbitrate Under Arkansas Law**

Analyzing the Contract under Arkansas law, as urged by Mr. France, "the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations." *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 586 S.W.3d 624, 629–30 (Ark. 2019), *cert. denied sub nom. Robinson Nursing Ctr. v. Phillips*, Case No. 19-1154, 2020 WL 3492670 (U.S. June 29, 2020) (citing *Reg'l Care of Jacksonville, LLC v. Henry*, 444 S.W.3d 356, 360 (Ark. 2014)).  As the proponent of the arbitration agreement, Flagship has the burden of proving these essential elements.  *Id*. at 630 (citing *DaimlerChrysler Corp v. Smelser*, 289 S.W.3d 466 (Ark. 2008)).

There is no dispute that Mr. France and Flagship are competent parties.  *See Lillian H Ashton Trust v. Caraway*, 370 S.W.3d 278, 282 (Ark. Ct. App. 2009) (citing *Union Nat'l Bank of Little Rock v. Smith,* 400 S.W.2d 652, 653 (Ark. 1966)) ("There is a presumption of law that every person is sane, fully competent, and capable of understanding the nature and effect of her contracts.").  The Contract contains appropriate identifiable subject matter (Dkt. No. 14-2).  The Contract is supported by consideration because each party to the Contract made promises in exchange for the promises of the other (*Id*.).  *See Asbury Auto. Used Car Ctr., L.L.C. v. Brosh*, 220 S.W.3d 637, 640 (Ark. 2005); *Essential Accounting Systems, Inc. v. Dewberry*, 428 S.W.3d 613, 617 (Ark. Ct. App. 2013) ("Mutual promises constitute consideration, each for the other.").  Mr. France had the opportunity to review the Contract, reviewed the Contract, executed the Contract, and made payments towards the purchase of the vehicle under the Contract.  *See Altice USA, Inc. v. Johnson*, 661 S.W.3d 707, 714–15 (Ark. Ct. App. 2023).  The Dealership lawfully assigned its interest in the Contract to Flagship, which may enforce the arbitration clause.  *See*

6

*Koch v. Compucredit Corp.*, 543 F.3d 460, 464–66 (8th Cir. 2008) (determining that right to enforce arbitration agreement was validly assigned).

> ### 3.    There Is A Valid Enforceable Agreement To Arbitrate Under Alabama Law

Construing the Contract under Alabama law, as urged by Flagship and provided for in the Contract, Flagship again "has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce." *Family Security Credit Union v. Etheredge*, 238 So.3d 35, 38 (Ala. 2017).  Flagship can again satisfy both elements.

The elements of a contract under Alabama law include:  an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.  *Baptist Health System, Inc. v. Mack*, 860 So.2d 1265, 1273 (Ala. 2003).  The Contract itself evidences the existence of an offer, acceptance of that offer, and consideration (Dkt. No. 14-2).  *Family Security Credit Union*, 238 So.3d at 40-41 (determining that, where valid consideration for a contract as a whole exists, it is sufficient for an arbitration provision).  Mr. France's assent to the Contract is established by both his signature on the Contract and his payments made pursuant to the Contact.  *See Baptist Health System, Inc.*, 860 So.2d at 1273 ("'Ordinarily, [assent] is manifested by a signature. [However], [a]ssent may be manifested by ratification.'").  Finally, Mr. France's agreement to and the inclusion of an arbitration clause in the Contract is clear (*see* Dkt. No. 14-2, at 1, 5).  The Contract was lawfully assigned to Flagship, which has the right to compel arbitration.  *See Nissan Motor Acceptance Corp. v. Ross*, 703 So.3d 324, 326 (Ala. 1997) ("A valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses.").

Having carefully reviewed the Contract, the Court finds that Flagship has met its burden of establishing the existence of a contract calling for arbitration under both Arkansas and Alabama law.

### 4.    Mr. France's Claims Fall Within the Scope Of The Arbitration Clause

Next, the Court must determine whether Mr. France's claims against Flagship fall within the scope of the arbitration clause. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *RentA-Ctr. W., Inc.*, 561 U.S. at 68–69. "When an arbitration agreement contains a clear and unmistakable agreement to arbitrate gateway issues of arbitrability, arguments regarding the arbitration agreement's validity or enforceability are for the arbitrator to decide." *Olotor, L.L.C. v. Townsend,* Case No. 5:20-CV-5013, 2020 WL 1861661, *2 (W.D. Ark. April 13, 2020) (citing *RentA-Ctr. W., Inc.*, 561 U.S. at 69 n.1); *see also Bd. of Tr. of Univ. of Ala. v. Humana, Inc.*, Case No. 2:24-cv-00165-RDP, 2024 WL 1748434, *3 (N.D. Ala. 2024) (citing *Neal v. GMRI, Inc.*, Case No. 1:19-cv-647-RAH, 2020 WL 698270, *4 (M.D. Ala. Feb. 11, 2020) (internal citations omitted) (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019)). When parties make this delegation, a court "possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 586 U.S. at 68.

Here, the Court determines that the Contract's delegation clause is clear and unambiguous. The parties intended for the threshold issues of arbitrability, legality, and enforceability of the arbitration clause to be decided by the arbitrator, and the Court must honor that agreement. *Id*.

### 5.    The Contract Is Not Invalid

Mr. France argues that the entire Contract is invalid and illegal because Arkansas law applies to the Contract and the interest rate is usurious (Dkt. No. 25, at 3). Flagship contests that

Arkansas law applies to the Contract but argues that, regardless, the dispute must still go to the arbitrator (Dkt. No. 27-1 at 3).  The Court agrees.

In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006), the United States Supreme Court considered whether a court or an arbitrator should resolve a claim that a contract is usurious and void *ab initio*.  *Id*. at 440.  The United States Supreme Court determined that a challenge to the validity of the contract as a whole and not just to the arbitration provision, like the one being made by Mr. France, must be brought before the arbitrator and not the court.  *Id*. at 449; *see also Benchmark Ins. Co. v. SUNZ Ins. Co*., 36 F.4th 766, 772 (8th Cir. 2022) (holding that, under *Buckeye*, the district court erred in denying motion to compel arbitration when the challenge was to contract's validity).  The Supreme Court observed that, while their determination might permit "a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void," such a risk was outweighed by the possibility of a court denying "effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable."  546 U.S. at 448–49.  Accordingly, here the parties' dispute must go to the arbitrator despite Mr. France's claim that the Contract is usurious and void.

### 6.    The Arbitration Clause Is Not Unconscionable

Mr. France also takes issue with the arbitration clause in the Contract (Dkt. No. 25, at 3–5).  Mr. France contends that the provisions of the arbitration clause are one-sided and unconscionable (Dkt. No. 25, at 4–5).  The arbitration clause may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., W., Inc*., 561 U.S. at 68 (citing *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).

Arkansas courts recognize that unconscionability may invalidate a particular provision within a contract.  Arkansas courts consider two types of unconscionability:  (1) procedural

unconscionability, which is absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party; and (2) substantive unconscionability, which generally involves excessive price or restriction of remedies. *LegalZoom.com, Inc. v. McIllwain*, 429 S.W.3d 261 (Ark. 2013) (citing White & Summers, Handbook of the Law Under the Uniform Commercial Code, § 4-1 (3d ed. 1988)). "In assessing whether a particular contract or provision is unconscionable, the courts should view the totality of the circumstances surrounding the negotiation and execution of the contract." *Ark. Nat'l Life Ins. Co. v. Durbin*, 623 S.W.2d 548, 551 (Ark. Ct. App. 1981) (emphasis added). Arkansas courts have emphasized that two important factors to consider when analyzing unconscionability are gross inequity in bargaining power between the contracting parties and "whether the aggrieved party was made aware of and comprehended the provision in question." *Id.*; *see also Hickory Heights Health & Rehab, LLC v. Watson*, 707 S.W.3d 499, 507 (Ark. Ct. App. 2025), *reh'g denied* (Apr. 2, 2025).

Similarly, under Alabama law "unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence." *Bess v. Check Express,* 294 F.3d 1298, 1306–07 (11th Cir. 2002) (citing *Green Tree Fin. Corp. v. Wampler,* 749 So.2d 409, 415, 417 (Ala. 1999)). Alabama law allows unconscionability to invalidate the arbitration agreement "if [the plaintiff] proves unconscionability by substantial evidence." *Id.* at 1307. Under Alabama law, "[t]he applicable standards for determining unconscionability are . . . whether there are (1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power." *Steele v. Walser,* 880 So.2d 1123, 1129 (Ala. 2003) (citations and internal quotation marks omitted). "All of these elements and factors, however, are just another way of discussing substantive unconscionability and

10

procedural unconscionability." *SCI Alabama Funeral Servs., LLC v. Hinton*, 260 So. 3d 34, 39 (Ala. 2018) (citing *Shield of Alabama v. Rigas*, 923 So.2d 1077, 1087 (Ala. 2005) ("This Court has also recognized a distinction between 'substantive unconscionability' and 'procedural unconscionability' and categorized the factors [in *Layne*] as either substantive or procedural."). "Whether the terms of the arbitration provision are 'grossly favorable to a party' corresponds to substantive unconscionability, and whether a party had 'overwhelming bargaining power' corresponds to procedural unconscionability." *Id.*

For the following reasons, Mr. France has failed to demonstrate that the arbitration clause in the Contract is unconscionable under either Arkansas or Alabama law.

Mr. France complains that the Contract is unconscionable because it does not allow for meaningful discovery. Under Arkansas law, "limitations on discovery in the arbitration process do not invalidate a contract." *BDO Seidman, LLP v. SSW Holding Co., Inc.*, 386 S.W.3d 361, 372 (Ark. 2012) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 21 (1991); *Goolsby v. PrimeFlight Aviation Servs., Inc.*, Case No. 5:17-cv-06069-SRB, 2017 WL 4570826, *7 (W.D. Mo. Aug. 9, 2017) ("Plaintiff provides no authority—and the Court can identify none—for the proposition that the more limited discovery afforded in arbitration agreements renders these agreements unconscionable."). Mr. France does not point to any Alabama authority—and the Court has not found any Alabama authority—where an arbitration provision was found unconscionable on the grounds that it provided for limited discovery.

Here, "the FAA specifically provides for discovery mechanisms in arbitration, 9 U.S.C. § 7, and arbitrators have 'the authority to determine the scope of discovery' when the parties have agreed to a valid arbitration agreement." *Goolsby*, 2017 WL 4570826, *7; *see also S. United Fire Ins. Co. v. Howard*, 775 So. 2d 156, 163–64 (Ala. 2000) (determining that arbitrator was

appropriate person to decide limitations of the parties' discovery rights) (citing *Dean Witter Reynolds, Inc. v. McDonald,* 758 So.2d 539 (Ala.1999)).  Mr. France asserts that Flagship "has a continu[ing] relationship with [the] dealership and holds all the key contract records."  Mr. France has not, however, stated what "contract records" that he seeks from Flagship have not been provided to him and why such documents would be unavailable to him in arbitration.  As set forth above, discovery is not wholly precluded in arbitration, and both sides are able to engage in it as authorized by the arbitrator.  *See* 9 U.S.C. § 7.  The Court determines that the arbitration clause's limitation on discovery does not render it unconscionable.  *See BDO Seidman, LLP v. SSW Holding Co., Inc.*, 386 S.W.3d 361, 372 (Ark. 2012) (determining that arbitration provision requiring parties to get permission from the arbitration panel to do discovery did not render arbitration clause unconscionable under Arkansas law); *Potts v. Baptist Health Sys., Inc.*, 853 So. 2d 194, 207 (Ala. 2002) (determining that contract with provision providing for discovery in arbitration was not so "grossly oppressive" as to be unconscionable under Alabama law).

Mr. France argues that the arbitration clause is one-sided and favors Flagship (Dkt. No. 25, at 4–5).  The Contract provides, however, any claim or dispute "shall, at *your or our* election be resolved by neutral, binding arbitration and not by a court action." (Dkt. No. 14-2, at 1).  In other words, either party may utilize the arbitration clause in the Contract to seek binding arbitration (*Id*.).  Further, the arbitration clause protects the rights of both parties "to seek remedies in small claims court for disputes or claims within that court's jurisdiction" and rights "to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief." (Dkt. No. 14-2, at 5).  The language of the arbitration clause is not one-sided (*see* Dkt. No. 14-2, at 5).

Mr. France complains that the arbitration clause is unconscionable because it lacks an "opt-out" clause and because it was part of a form contract that was sent to his home for him to sign and return (Dkt. No. 25, at 4). These claims also lack merit. The use of a form contract, with or without a binding arbitration clause, does not render the contract unconscionable. *See Geldermann & Co. v. Lane Processing, Inc.*, 527 F.2d 571, 576 (8th Cir. 1975) ("The fact that the provision is part of a printed 'form' contract does not render it automatically unenforceable, particularly when all parties have knowingly assented to the inclusion of the provision."); *Strickland v. Mitsubishi Motors Credit of Am., Inc.*, Case No. CV03-HGD-0439-S, 2004 WL 7330127, *6 (N.D. Ala. Mar. 3, 2004) (determining that arbitration clause, which was part of consumer credit agreement for the lease of an automobile, was not unconscionable in part because "[t]he Alabama Supreme Court has rejected the general notion that arbitration agreements are contracts of adhesion.") (citing *Johnnie's Homes, Inc. v. Holt*, 790 So.2d 956 (Ala. 2001)). As stated in *Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009), "take-it-or-leave-it agreements between businesses and consumers are used all the time in today's business world." "Because the bulk of contracts signed in this country are form contracts—'a natural concomitant of our mass production-mass consumer society'—any rule automatically invalidating adhesion contracts would be 'completely unworkable.'" *Id.*; *see Carlson v. BMW Fin. Servs. NA, LLC*, __ F.Supp.3d __, 2025 WL 80245, *1 (D. Minn. Jan. 13, 2025) ("Non-negotiable form contracts with arbitration clauses have become standard in consumer contracts of all stripes.").

In *Strickland v. Mitsubishi*, the Northern District of Alabama, applying Alabama law, upheld an arbitration clause in a retail buyers contract for the lease of an automobile. The court determined that the arbitration clause was not unconscionable because it applied equally to the parties, it did not exempt the seller from arbitration, and nothing in the arbitration clause limited

13

the amount of damages that could be recovered. *Strickland*, 2004 WL 7330127, *6. Similarly here, the arbitration clause is not unconscionable; it applies equally to the parties, it does not exempt Flagship from arbitration, and nothing in the arbitration clause limits the amount of damages that may be recovered (Dkt. No. 14-2, at 5).

Mr. France generally alleges unequal bargaining power and contends that the arbitration clause was not a "negotiated choice." (Dkt. No. 25, at 4). In support of this allegation, Mr. France points out that he was "at home" when he signed the Contract, and he had "no way to challenge and disagree" with the arbitration clause. Mr. France, however, signed a contract at the Dealership identical to the one that he signed at home only 12 days before, and the contracts included identical arbitration clauses (Compare Dkt. Nos. 14-1, at 5; 14-2, at 5). Mr. France does not dispute that he had an opportunity to challenge the arbitration clause at the Dealership when he signed the initial contract. Further, Mr. France does not assert that he was under any time pressure to sign the agreement at his home, nor can he assert that he was prevented from not signing the Contract and walking away from the deal. Finally, the arbitration clause does not exempt Flagship from being bound to arbitrate a dispute if Mr. France enforces the arbitration clause, and there is nothing in the arbitration clause that limits the amount of damages that Mr. France may recover. *Goodwin v. Ford Motor Credit Co.*, 970 F. Supp. 1007, 1013 (M.D. Ala. 1997) ("A party cannot rely on an abstract principle or theory of unfairness of a bargain to make a case for unconscionability; it must still be gauged by the actual circumstances of the case, and not in the abstract."). There is nothing in Mr. France's allegations that leads the Court to conclude that the arbitration provision is grossly favorable to Flagship or that the circumstances at the time gave Flagship overwhelming bargaining power.

Accordingly, the undisputed facts on the record before the Court indicate that Mr. France has not met his burden of demonstrating that the arbitration clause was unconscionable. *See Strickland*, 2004 WL 7330127 *7 (determining that when the buyer failed to present evidence that she bargained with the dealer to avoid the arbitration clause without success, she had not "satisfied her burden of proof as to this indicium of unconscionability.").

### 7.    There Is No Financial Barrier To Justice In Arbitration

Mr. France contends that arbitration could cost in excess of $5,000.00 and that this creates "a financial barrier to justice" (Dkt. No. 25, at 5).  Mr. France further asserts that Flagship "will only have a maximum cost of up to $5,000.00 and any excess cost of Arbitration is transferred to the Plaintiff."  (Dkt. No. 25, at 5).  Mr. France's statements show a misunderstanding of the arbitration clause.  The arbitration clause provides that Flagship "will pay [Mr. France's] filing, administration, service or case management fee and [Mr. France's] arbitrator or hearing fee all up to a maximum of $5,000[.00], unless the law or the rules of the chosen arbitration organization require us to pay more." (Dkt. No. 14-2, at 5).  At that point, Mr. France will be financially responsible for his arbitration fees and costs.  Flagship is responsible for its own costs in the arbitration after it pays the maximum of $5,000.00.  The Court does not read any provision of the arbitration clause to make Mr. France responsible for Flagship's cost of arbitration after Flagship pays a maximum of $5,000.00.

Under Arkansas law, arbitration is viewed by courts as a favorable, less expensive, and more expeditious means of settling disputes.  *See Jorja Trading, Inc.*, 598 S.W.3d at 4; *GGNSC Holdings LLC*, 487 S.W.3d at 358.  Under Alabama law, the Court cannot consider Mr. France's ability to afford the fees associated with arbitration as grounds to find the arbitration agreement unconscionable.  "Because the general principles of Alabama contract law do not excuse

15

performance on grounds of financial hardship, we cannot allow a party's poverty, standing alone

and independent of other considerations justifying a finding of unconscionability, to constitute a

defense to enforcement of an arbitration agreement." *Green Tree Fin. Corp. v. Wampler,* 749

So.2d 409, 416 (Ala. 1999).  Moreover, here the arbitration clause specifically provides that

Flagship, the party enforcing the arbitration clause, must pay the first $5,000.00 of arbitration fees,

which weighs against a finding that arbitration is a barrier to Mr. France.  Accordingly, the Court

cannot find on the record before it sufficient evidence to render the Contract's arbitration clause

unconscionable on the basis of the costs to Mr. France of arbitration.

**8.      The Arbitration Clause Does Not Lack Mutuality Of Obligation**

Mr. France claims that the arbitration provision is unconscionable because "Flagship can

go to court – But the Plaintiff cannot." (Dkt. No. 25, at 4).  Flagship maintains that this as an

argument that the Contract's arbitration clause lacks mutuality of obligation.  Mr. France points to

*Pedregon v. TitleMax of New Mexico, Inc.*, Case No. A-1-CA-39466, 2023 WL 357736 *1 (N.M.

Ct. App. Jan. 23, 2023), to support his claim.  In *Pedregon*, the arbitration provision at issue

excluded from arbitration actions to foreclose on the collateral vehicle or to stop TitleMax from

taking the vehicle but subjected all other disputes to arbitration. *Id*. *1.  The New Mexico Court

of Appeals determined that the arbitration provision was unreasonably and unfairly one sided

because the arbitration provision preserved TitleMax's right to access the court to bring a

foreclosure action to repossess the vehicle but foreclosed the borrower's right to access the courts

for their most likely claims. *Id*. *2.

Flagship points to *Altice USA, Inc. v. Peterson,* 661 S.W.3d 699, 701 (Ark. Ct. App. 2023).

In *Altice USA, Inc.*, Altice USA, Inc. ("Suddenlink") appealed the lower court's denial of its

motion to compel arbitration against Sandra Peterson, a Suddenlink subscriber. *Id*. at 1.  Ms.

Peterson argued, among other things, that the arbitration provision was unconscionable because the provision allowed Suddenlink to "bypass arbitration in favor of charging late fees, to terminate service, to refer accounts to collection agencies, and to limit the customer's ability to dispute charges." *Id*. at 5.

The Arkansas Court of Appeals determined that "[t]he fact that Suddenlink may use other measures to resolve disputes before resorting to arbitration, including late fees, cancellation, and collection, has no relevance to our analysis—which looks only at the terms of the arbitration agreement itself." *Id*. at 8. The Court of Appeals also determined that the terms of the arbitration provision did not operate to shield only Suddenlink from litigation but allowed both it and the subscriber to file their disputes in small claims court in appropriate cases. *Id*. at 8–9. The Arkansas Court of Appeals determined that Ms. Peterson's mutuality of obligation argument lacked merit. *Id*. at 9.

> The provision of the Contract at issue here, like the provision in *Altice*, provides:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at *your or our* election, be resolved by neutral, binding arbitration and not by a court action. . . . *You and we* retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. *Neither you nor we* waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief.

(Dkt. No. 14-2, at 5) (emphasis added).

Here the arbitration clause in the Contract is like the one at issue in *Altice*, not the arbitration provision in *Pedregon*. Here, like in *Altice*, self-help remedies available to Flagship do

not destroy mutuality of obligation because they are also available to Mr. France, and the arbitration clause's terms do not operate to shield Flagship from litigation. *See Altice USA, Inc.*, 661 S.W.3d at 705.[1]

Mr. France's assertion that any claim he makes "would have to be taken to arbitration," while Flagship retains other avenues to go to court (Dkt. No. 25, at 4), appears to derive from the waiver provision of the Contract. The waiver provision provides in relevant part: "*Neither you nor we waive the right to arbitrate* by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief." (Dkt. No. 14-2, at 5). Thus, what Mr. France refers to as a "carve out" for Flagship is a waiver provision that applies to both Flagship and Mr. France and that does not violate the mutuality of obligation. *See Jorja Trading, Inc. v. Willis*, 598 S.W.3d 1, 8 (Ark. 2020) (considering arbitration provision containing similar language and determining that Jorja Trading did not waive the right to arbitrate by first seeking relief in district court).

### C.    Conclusion On Motion To Compel Arbitration

The Court determines that the FAA applies in this case, that there is a valid and enforceable agreement to arbitrate between the Mr. France and Flagship, and that the dispute in question falls within the scope of that agreement. Further, the Court determines that none of the provisions of

---

[1] "[U]nder Alabama law, even a unilateral arbitration agreement is enforceable, so long as the contract in which it is contained contains some consideration given by each side." *Latifi v. Sousa*, Case No. CV95-H-2136-NE, 1996 WL 735260, *5 (N.D. Ala. Dec. 23, 1996). The court pointed out that in *Marcrum v. Embry,* 282 So. 2d 49, 51 (Ala. 1973), the Alabama Supreme Court held that "'mutuality in a contract does not mean equal rights under the contract, or that each party is entitled to the same rights or covenants under the contract. So long as there is a valuable consideration moving from one side to the other, or there are binding promises on the part of each party to the other, there is adequate consideration for a valid contract.'" *Id*. (quoting *Marcrum*, 282 So. 2d at 51). As set forth above, there is adequate consideration for the Contract at issue here.

the arbitration clause are unconscionable.  Therefore, the Court will compel the parties to arbitrate their dispute.

### D.    Motion To Stay

The Court will stay, rather than dismiss, this action pending the conclusion of the arbitration proceedings.  *See* 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." (emphasis added)); *Smith v. Spizzirri, et al.*, 601 U.S. 472, 478 (2024).  Accordingly, the Court grants Flagship's motion to stay these proceedings.

### III.    Conclusion

For the foregoing reasons, the Court grants Flagship's motion to stay and compel arbitration (Dkt. No. 14).  The claims asserted by Mr. France are stayed pending the conclusion of the arbitration proceedings.  The parties are ordered to proceed to arbitrate this dispute in accordance with the terms of the Contract and consistent with the terms of this Order.  Finally, the parties are ordered to file a status report, either jointly or separately, with the Court within 14 days of receiving the arbitration decision.  The Court denies as moot Mr. France's motion for preliminary injunction to temporarily suspend loan payments (Dkt. No. 10).

It is so ordered this 9th day of September, 2025.

_____
Kristine G. Baker
Chief United States District Judge